UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| LOLITA M. ARNOLD, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 06-cv-516 (RCL) |
| ISLAMIC REPUBLIC OF IRAN, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

This action was filed by U.S. servicemen and their family members to call defendants Islamic Republic of Iran and the Iranian Ministry of Information and Security to account for their role in the 1983 bombing of the Marine barracks in Beirut, Lebanon. The Court consolidated this suit—which was brought pursuant to the former "state-sponsored terrorism" exception to the Foreign Sovereign Immunities Act ("FSIA"), codified at 28 U.S.C. § 1605(a)(7), and then re-filed under the current exception, codified at 28 U.S.C. § 1605A—with three § 1605A actions arising from the 1983 attacks, and last year issued an opinion finding defendants "responsible for the deaths and injuries of hundreds of American servicemen," "liable for the emotional injuries their family members have suffered," and deserving of punishment to the "fullest legal extent possible." *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 90 (D.D.C. 2010).

The issue before the Court today is plaintiffs' motion for payment of Special Master Susan Meek, M.D., J.D., who diligently assisted the Court throughout these proceedings by gathering and reviewing countless depositions, documents and records. Plaintiffs' request poses

two distinct problems: first, plaintiffs seek payment for work performed by Dr. Meek prior to the commencement of this action; and second, they request compensation for work performed after this suit was filed but before the creation of § 1605A, which is the only provision that authorizes courts to order reimbursement for special master expenses under the FSIA. Having previously disposed of the former concern, the Court now turns to the latter.

## II. BACKGROUND

### A. The National Defense Authorization Act for Fiscal Year 2008

In 1996, Congress created the state-sponsored terrorism exception as part of the Antiterrorism and Effective Death Penalty Act. Pub. L. No. 104-132, § 221, 110 Stat. 1241–43 (1996). In light of its ten-year statute of limitations, § 1605(a)(7) quickly became the basis for hundreds of lawsuits against various state sponsors of terrorism. To aid the judiciary in reviewing evidence in these often-sprawling matters—many of which involved hundreds of plaintiffs—courts frequently turned to special masters appointed pursuant to Federal Rule of Civil Procedure 53. The need for such assistance with these matters has been tremendous; indeed, this Court previously observed that had it "been required to take on the functions performed by these special masters, the work of this Court with respect to numerous other pending civil and criminal cases would have come screeching to a halt." *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 110 (D.D.C. 2009) ("*In re Terrorism Litig.*"). A lingering problem with these appointments, however, has been parties' inability to compensate special masters for their tireless work—a result largely attributable to plaintiffs' inability to collect upon their FSIA judgments.

Concerned with "significant setbacks that plaintiffs experienced in actions under § 1605(a)(7)," Congress enacted the National Defense Authorization Act for Fiscal Year 2008,

Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338–44 (2008) ("NDAA" or "2008 Amendments"), which, *inter alia*, replaced § 1605(a)(7) with § 1605A. *In re Terrorism Litig.*, 659 F. Supp. 2d at 58. With respect to the FSIA, the NDAA included four central initiatives: (1) to provide a federal cause of action against state-sponsors of terrorism, (2) to permit imposition of punitive damages for such acts, (3) to authorize compensation for special masters who aid the judiciary in guiding these often-unwieldy cases through litigation, and (4) to create new mechanisms for the enforcement of judgments under the Act. *Id*. at 58–59. With regard to special masters, the new state-sponsored terrorism exception includes the following provision:

> (e) Special Masters.—
>
> (1) In general.— The courts of the United States may appoint special masters to hear damage claims brought under this section.
>
> (2) Transfer of funds.— The Attorney General shall transfer, from funds available for the program under section 1404C of the Victims of Crime Act of 1984 (42 U.S.C. 10603c), to the Administrator of the United States district court in which any case is pending which has been brought or maintained under this section such funds as may be required to cover the costs of special masters appointed under paragraph (1). Any amount paid in compensation to any such special master shall constitute an item of court costs.

28 U.S.C. § 1605A(e). Numerous special masters have now received payment for their work on state-sponsored terrorism cases pursuant to this provision through procedures set up by the Department of Justice's Office for Victims of Crime. *See, e.g.*, Order for Payment of Special Master, Nov. 12, 2010, *Valore*, No. 09 Civ. 1959 [74-1].

A critical feature of the NDAA is that § 1605A was made retroactive in many respects. Section 1083(c) of the Act provides two paths, subject to certain statutory requirements, for retroactive application of the state-sponsored terrorism exception: first, actions which were pending in the courts at the time the Act was passed may, on the parties' motion, be "given effect

3

as if the action had originally been filed under" the new exception; and second, where suits had been timely commenced under § 1605(a)(7), "any other action arising out of the same act or incident may be brought under section 1605A." NDAA § 1083(c)(2)–(3). Numerous FSIA plaintiffs have subsequently used these provisions to proceed with suits brought under § 1605(a)(7) as § 1605A actions. And as a result of this trend, this Court has, on occasion, raised the following question: Where a special master was appointed and performed work on a case prior to the 2008 Amendments, and that case was subsequently re-filed under § 1605A pursuant to the procedures set forth in § 1083(c) of the NDAA, may the Court compensate that special master for the work performed before the Act became law? In its omnibus opinion reviewing the effects of the 2008 Amendments, this Court—speaking in general terms—suggested that special masters could receive compensation for such work. *See In re Terrorism Litig.*, 659 F. Supp. 2d at 111 (criticizing view that "any sort of retroactivity problem would serve as a bar" to such payments). The government, in contrast, has consistently argued that such payments are impermissible. *See, e.g.*, United States' Statement in Response, July 25, 2008, *Peterson v. Islamic Republic of Iran*, No. 01 Civ. 2094 [389]. Until today, however, the Court has not had the opportunity to confront this question in a live controversy.

> B. **Procedural History**

This suit was brought in 2006 pursuant to the former state-sponsored terrorism exception, and in late 2009 plaintiffs amended their complaint to state claims under § 1605A. Amended Complaint, Nov. 30, 2009 [18]. A few months later, plaintiffs sought the appointment of Susan Meek, M.D., J.D. as a special master in this action. Affidavit of Dr. Meek, Mar. 8, 2010 [26]. The Court subsequently appointed Dr. Meek *nunc pro tunc* "from the date she began working on reports and recommendations for this case." Second Order Appointing Special

Master, Mar. 18, 2010 [31]. Final judgment was ultimately entered in this action, along with the three consolidated matters, in March of 2010. Order & Judgment, Mar. 31, 2010 [34].[1]

Plaintiffs subsequently moved for payment of Dr. Meek pursuant to § 1605A(e). Motion for Order Authorizing Payment to Special Master, Nov. 12, 2010 [40]. In support of that motion, plaintiffs submitted a statement from Dr. Meek in compliance with the Court's administrative plan governing special masters. Verified Voucher of Special Master Susan Meek M.D., J.D., Nov. 12, 2010 [40-2]. In that voucher, Dr. Meek seeks payment for work beginning on June 15, 2003, *id*. at 3—despite the fact that this case did not exist prior to March 10, 2006. In response—and after plaintiffs' repeated failures to take up the Court's invitation to brief the matter—the Court held that "it lacks the authority to order payment for work performed by special masters while appointed in cases involving different parties, where that work was undertaken prior to the filing of the FSIA action in which compensation under § 1605A(e) is sought." Order 2, Jan. 6, 2011 [46]. It therefore declined to "consider any time billed by Special Master Meek prior to the filing of this case on March 10, 2006." *Id*. at 4. That Order, however, did not address the time billed by Dr. Meek during the period between the filing of this case and the enactment of the NDAA, and so—this being the first time the issue is before it—the Court invited the government's views on the matter. *Id*. at 3–4.

In its response, the government advances three arguments as to why no compensation may be ordered for work performed prior to the enactment of the NDAA on a case brought under § 1605(a)(7), even where that case is converted into a § 1605A suit. Department of Justice's Response, Apr. 29, 2011 [48] ("Gov. Br."). First, the government stresses that the payment provision of § 1605A(e)(2) only permits compensation for work performed by special masters

---

[1] The Court later revised the final judgment in a manner not relevant here. Revised Order & Judgment, Sep. 20, 2010 [37].

5

appointed pursuant to § 1605A(e)(1), and because paragraph (1) did not exist prior to the 2008 Amendments, no pre-NDAA work could have been performed by a special master appointed pursuant to that provision. *Id*. at 4–5. Second, the government notes that courts lack authority to direct agencies to issue payments absent statutory authorization, and so any order for payment of pre-NDAA work would encroach upon Congress's exclusive control over treasury funds under the Constitution. *Id*. at 6–7. Finally, the government maintains that the Court's *nunc pro tunc* Order cannot create a retroactive effect where the statute does not so provide. *Id*. at 7–8. In response, plaintiffs argue that the Court possessed the authority to appoint Dr. Meek prior to the 2008 Amendments, and emphasize that Congress intended the entirety of § 1605A—including the special master provisions—to have retroactive effect. Memorandum in Response, May 13, 2011 [40] ("Ps.' Br.").[2] For reasons set forth below, the Court finds that the 2008 Amendments authorize payment to special masters for pre-NDAA work performed in cases brought under § 1605(a)(7) and then re-filed under § 1605A pursuant to § 1083(c)(2) of the NDAA, but not such cases re-filed under § 1083(c)(3) of the Act, and therefore holds that Dr. Meek cannot receive payment for any work performed prior to the Amended Complaint in this case.

## III.    ANALYSIS

### A.    Authorization for Payment of Special Master's Pre-NDAA Work

The question before the Court today is whether Congress intended that the provision for compensation of special masters in terrorism-related FSIA actions added in 2008 apply to special masters already assisting courts in processing state-sponsored terrorism cases under the prior exception. The touchstone of retroactivity is congressional intent, and courts apply a two-step

---

[2] Plaintiffs also point out that the government's response came after the initial deadline set by the Court. Ps.' Br. at 1 & n.1. However, since the delay was caused, in the first instance, by the Court's inadvertent failure to provide the government with the relevant materials, and because plaintiffs have demonstrated no prejudice caused by the government's delay, the Court will not fret over on the timing of the response.

6

methodology to evaluate whether a statute should apply to cases pending when it is enacted. First, a court "look[s] to 'whether Congress has expressly prescribed the statute's proper reach,'" or, in the absence of an express command, determines if it can "draw a comparably firm conclusion about the temporal reach specifically intended by applying . . . 'normal rules of construction.'" *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994); *Lindh v. Murphy*, 521 U.S. 320, 326 (1997)); *see also Lytes v. D.C. Water & Sewer Auth.*, 572 F.3d 936, 939 (D.C. Cir. 2009) ("We first look for an express command regarding the temporal reach of the statute, or, in the absence of language as helpful as that, determine whether a comparably firm conclusion can be reached upon the basis of the normal rules of statutory construction."). Second, in the event a court is unable to identify a clear statement of Congress' intent, it examines "whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of 'affecting substantive rights, liabilities, or duties on the basis of conduct arising before its enactment,'" in which case the court "appl[ies] the presumption against retroactivity." *Fernandez-Vargas*, 548 U.S. at 37–38 (quoting *Landgraf*, 511 U.S. at 278). This second step—and application of the presumption against retroactivity—is only necessary, however, where "there is no congressional directive on the temporal reach of a statute." *Martin v. Hadix*, 527 U.S. 343, 352 (1999).

There is no dispute that the NDAA has some retroactive application, Gov. Br. at 5 n.4, as the Act creates a mechanism by which § 1605(a)(7) claimants may request that those claims be treated as if brought under § 1605A. Specifically, the Act provides, on the one hand, that

> [w]ith respect to any action that (i) was brought under section 1605(a)(7) of title 28, United States Code, or [the Flatow Amendment], before the date of the enactment of this Act, (ii) relied upon either such provision as creating a cause of action, (iii) has been adversely affected on the grounds that either or both of these provisions fail to create a cause of action against the state,

7

> and (iv) as of such date of enactment, is before the courts in any form, . . . that action, and any judgment in the action shall, on motion made by plaintiffs to the United States district court where the action was initially brought, or judgment in the action was initially entered, be given effect as if the action had originally been filed under section 1605A(c) of title 28, United States Code.

NDAA § 1083(c)(2)(A) (the "prior case procedures"). In other words, "Congress gave FSIA plaintiffs in cases pending before the courts . . . an opportunity to have the newly-enacted provision retroactively applied to their cases." *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 169 (D.D.C. 2010). Additionally, the Act provides, on the other hand, that

> [i]f an action arising out of an act or incident has been timely commenced under section 1605(a)(7) of title 28, United States Code, . . . any other action arising out of the same act or incident may be brought under section 1605A of title 28, United States Code.

*Id*. at § 1803(c)(3) (the "related case procedures"). This provision permits "a plaintiff [to] bring a separate action under § 1605A within a specified range following final judgment in the earlier proceeding." *Rimkus*, 750 F. Supp. 2d at 181.

Despite Congress' clear statement as to the 2008 Amendment's "Application to Pending Cases," NDAA § 1083(c) (title), the government argues that the special master provision in § 1605A limits payment to person appointed under § 1605A(e)(1), and that because there was no authority to appoint special masters under § 1605A(e)(1) since paragraph (1) did not exist prior to 2008, the Court cannot order compensation for special masters for work undertaken prior to the 2008 Amendments. Gov. Br. at 4–5. This argument may be a correct reading of § 1605A(e) in isolation; however, the government's position ignores the provision for retroactivity found elsewhere. The NDAA expressly provides that plaintiffs in future FSIA cases involving events occurring prior to the 2008 Amendments—such as plaintiffs here—may seek to have § 1605A applied to their case. *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 57 (D.D.C. 2010).

This is therefore not a situation where—as in the case upon which the government relies—a statute has been passed with several provisions, some of which contain retroactive language and some of which do not. *See Martin*, 527 U.S. at 353–56 (examining statute in which first provision lacked any express mandate as to retroactivity while second contained "explicitly retroactive language"). In such a case, it is a straightforward conclusion that certain provisions should be applied retroactively, while others should not. Here, by contrast, the NDAA contains two sections: the first replaces § 1605(a)(7) with an entirely new state-sponsored terrorism exception—§ 1605A—which itself includes a number of provisions, NDAA § 1083(a); and the second declares that this *entire* new exception can be applied retroactively. NDAA § 1083(c). In light of this structure, the question of retroactivity does not turn on the language of a specific provision in § 1605A, but rather is dependent upon whether the method in § 1083(c) used by plaintiffs—the prior case procedures or the related case procedures—mandates retroactive application of § 1605A.

With respect to the prior case procedures, the NDAA instructs courts to treat a case converted into a § 1605A suit under that section "*as if the action had originally been filed*" under § 1605A. NDAA § 1083(c)(2)(A) (emphasis added). As an initial matter, the explicit provision for the application of § 1605A to "prior" cases is an unambiguous directive to apply the 2008 Amendments to litigation already in progress under the former state-sponsored terrorism exception. *Cf. Felter v. Salazar*, 679 F. Supp. 2d 1, 6 (D.D.C. 2010) (noting that statutes need not contain term "retroactive" to require retroactive application). And if this directive for courts to treat suits re-filed under § 1083(c) *as if they had originally been filed* under § 1605A is to have any meaning at all, courts must treat every aspect of the litigation as though it was done pursuant to the current state-sponsored terrorism exception. Thus, courts have awarded punitive

damages in cases originally brought under § 1605(a)(7) even though such punitive damages were unavailable in suits under the prior state-sponsored terrorism exception. *Murphy*, 740 F. Supp. 2d at 79–83. Courts have permitted plaintiffs to add claims under § 1605A(d)—which are only permitted "[a]fter an action has been brought under" § 1605A, 28 U.S.C. § 1605A(d)—even though the original action was filed under § 1605(a)(7). *Certain Underwriters at Lloyds London v. Great Socialist People's Libyan Arab Jamahiriya*, 677 F. Supp. 2d 270 (D.D.C. 2010). And courts have allowed plaintiffs to pursue execution measures reserved only for judgments under § 1605A despite the underlying claims having been originally filed as § 1605(a)(7) actions. Order, Mar. 31, 2011, *Heiser v. Islamic Republic of Iran*, No. 00 Civ. 2329 [180]. And these provisions for a federal cause of action, punitive damages, and pre-judgment attachment are not applied retroactively because each of them contain statements that they apply to pending cases; instead, courts have applied them in cases converted pursuant to the prior case procedures because each provision is part of § 1605A, and § 1605A is made retroactive *in its entirety* by § 1083(c)(2) of the NDAA. Here, the same mechanism that provides for retroactive application of §§ 1605A(c) & 1605A(d) also applies to § 1605A(e)—because cases converted pursuant to the prior case procedures are treated as if they "had originally been filed" under § 1605A, NDAA § 1083(c)(2), special masters appointed in such cases are treated as if they were appointed "to hear damage claims brought under" § 1605A, in accordance with the requirements of § 1605A(e)(1). To hold otherwise would improperly eliminate the retroactive effect expressly provided for in the NDAA.[3] There is thus no need to "resort to speculation or judicial default rules" when the

---

[3] This conclusion does not, as the government suggests, render the phrase "appointed under paragraph (1)" meaningless. Gov. Br. at 5. Paragraph (1) of the relevant provision states that courts may appoint special masters in actions "brought under this section," while paragraph (2) provides for compensation of special masters appointed under paragraph (1). 28 U.S.C. § 1605A(e). A plain reading of this provision is that only special masters working on cases brought pursuant to § 1605A (either initially or through the NDAA procedures)—and not special masters in § 1605(a)(7) actions—may rely on the compensation provisions. Indeed, this Court expressed this precise understanding of these provisions when denying payment in cases where plaintiffs *did not* seek to have the Court
10

NDAA creates "a clear mechanism by which cases that were previously decided or pending under § 1605(a)(7) may be brought within the reach of the revised terrorism exception § 1605A," *In re Terrorism Litig.*, 659 F. Supp. 2d at 111, and the Court will not undermine the intent of Congress[4]—expressed in § 1083(c)(2)—to fashion a distinction between provisions of § 1605A that is in plain conflict with the statutory text. *See Brown v. Secretary of Army*, 78 F.3d 645, 648 (D.C. Cir. 1996) (holding where congressional command of retroactivity can be found in relevant statutory text, no further inquiry is necessary).

For these same reasons, the government's contention that an order of payment would encroach upon Congress' constitutional control over the use of treasury funds, Gov. Br. at 6, is an empty concern. The government is correct that the Court must adhere to "the limitation Congress imposed on the Court's authority to compensate special masters out of the emergency reserve of the Crime Victims Fund." *Id*. However, in light of the Court's above holding that Congress—through the language of § 1083(c)(2)—did in fact authorize courts to direct payment for pre-NDAA work in cases initially brought pursuant to § 1605(a)(7) but re-filed under §

---

treat the suit as if brought under § 1605A. *See* Order, *Peterson*, No. 01 Civ. 2094 [430] ("[T]hese consolidated cases are maintained under . . . § 1605(a)(7), rather than the new terrorism exception, § 1605A . . . . Accordingly, the new provisions in 28 U.S.C. § 1605A(e) are not applicable to these particular cases because § 1605A(e)(2) provides for the payment of special masters only in those cases brought or maintained pursuant to the new enactment, § 1605A."). And while the inability of plaintiffs to assert new claims under § 1605(a)(7) may eventually render this phrase moot, at the time the NDAA was enacted a sufficient number of cases existed under § 1605(a)(7) to justify the inclusion of a clause limiting payment of special masters.

[4] Though the Court need not resort to legislative history, evidence in the record remains a useful guide. *Felter*, 679 F. Supp. 2d at 5. Here, legislative history indicates that Congress intended every provision of § 1605A to apply retroactively. The bill summary accompanying the NDAA explains that § 1083 allows "(1) a private right of action by [a qualified] claimant; and (2) U.S. courts to appoint special masters to hear such claims," and stated that the Act "[p]rovides application to pending cases." Congressional Research Service, *Summary of Public Law 110-181* (2008). Similarly, the House Report declared that § 1083 "would allow any case previously brought under the state-sponsor of terrorism exception to the FSIA under section 1605(a)(7) . . . and which is still before a court, to be refilled *as if the original claim had been filed under the provisions of this section*." H. Rept. No. 10-477, at 1001 (2007) (emphasis added). In other words, "[c]laims brought prior to the enactment of [the NDAA] against a foreign state that at the time was designated as a state sponsor of terrorism . . . would still be heard under this section." *Id*. And though this Report was for the predecessor bill—H.R. 1585—to the legislation that was signed and became the NDAA—H.R. 4986—President Bush vetoed H.R. 1585 over concerns—which were remedied by H.R. 4986—that Iraq was exposed to liability under the first bill. Congressional Research Service, *Suits Against Terrorist States by Victims of Terrorism* 48 & n.179 (2008). Because the two bills are identical in all other respects, Congress' statement concerning H.R. 1585's retroactive application remains valid evidence of its intent as to the NDAA.

1605A, there is no concern that an order of payment would invade upon the legislature's province. Unlike in *OPM v. Richmond*, in which the compensation sought by the plaintiff "would be in direct contravention of the federal statute upon which [the] ultimate claim to funds must rest," 496 U.S. 414, 424 (1990), here the relevant statutes—§ 1605A and § 1083(c)(2) of the NDAA—expressly authorize such payments. Any award for pre-2008 work would thus spend treasury funds "according to the letter of the difficult judgments reached by Congress," *id.* at 428, and would not risk any improper exercise of judicial authority.

In contrast to the statement of retroactivity in § 1083(c)(2), the provision of the NDAA dealing with "related" suits lacks any express directive. The related case procedures contemplate the existence of two cases—the original suit brought under § 1605(a)(7) and the new suit brought under § 1605A. NDAA § 1083(c)(3). But this new suit is precisely that—a new suit. Nothing in the text of § 1083(c)(3) permits conversion of any pending suit into a § 1605A action; indeed, the section explicitly distinguishes between the action "commenced under section 1605(a)(7)" and the "*other* action" subsequently be brought under § 1605A. *Id.* (emphasis added). In other words, "the NDAA provides that plaintiffs may bring a *new action* 'arising out of the same act or incident' of a prior action that was 'timely commenced.'" *Rimkus*, 750 F. Supp. 2d at 178 (emphasis added); *see Roeder v. Islamic Republic of Iran*, 742 F. Supp. 2d 1, 6 (D.D.C. 2010) ("Taken together, § 1605A and § 1083(c)(3) provide a cause of action against state sponsors of terrorism in otherwise-untimely *new actions* under the NDAA—not refiled old ones.") (emphasis in original). And any new case under § 1605A would, by definition, be brought after the enactment of the NDAA. Thus, § 1083(c)(3) does not implicate any retroactivity concerns since cases brought under the related case procedures are filed after the 2008 Amendments, while the statute itself does not instruct courts to apply § 1605A to pending cases.

### B. Dr. Meek's Request for Payment in this Case

This case was brought pursuant to the former state-sponsored terrorism exception, and thus after the 2008 Amendments plaintiffs were eligible to move pursuant to § 1083(c)(2) to have the case converted into a § 1605A action. Plaintiffs, however, missed the statutory deadline for such a motion. *See* NDAA § 1083(c)(2)(C)(ii) (requiring plaintiffs to move "within the 60-day period beginning on the date of the enactment of [the NDAA]"); *see also Anderson v. Islamic Republic of Iran*, 753 F. Supp. 2d 68, 2010 U.S. Dist. LEXIS 126457, at *28 n.7 (D.D.C. Dec. 1, 2010) ("Congress explicitly limited the use of the prior action procedures to a strict 60-day period following the Act."). Instead, plaintiffs filed an Amended Complaint in November 2009 stating claims for relief under § 1605A. Though "the act of filing an Amended Complaint . . . is much more akin to the re-filing procedures outlined in the prior actions section of the [NDAA]," this Court— recognizing that under a plaintiff's request is untimely § 1083(c)(2)— has previously held that "the filing of the Amended Complaint . . . constitute[s] invocation of the related action procedures of the NDAA," *id.* at *28–31 n.7, explaining:

> [A]t the time plaintiffs filed the Amended Complaint, they were proceeding with a timely action under § 1605(a)(7). Under the plain terms of the NDAA, they were therefore eligible to bring a separate action under the related action procedures outlined in the Act. . . . In light of the fact that plaintiffs were capable of bringing such a suit, the Court does not see why it should punish plaintiffs for instead choosing to amend their original Complaint.
>
> Moreover, no purpose is served by the Court requiring future plaintiffs in timely § 1605(a)(7) actions to file an entirely separate action . . . . There is no benefit to either plaintiffs or defendants of having simultaneous litigations, while the costs to the Court—in terms of time, repetition, and needless complication—has already been established.

*Id.* at *29–30 n.7. For these same reasons, the Court in this case permitted plaintiffs to proceed under § 1605A as though they invoked the related case procedures.

13

Though this case has proceeded under § 1605A despite being ineligible under the prior case procedures, the inescapable reality is that the Court lacks the same clear congressional directive for retroactive application that it possesses in cases converted under § 1083(c)(2). While setting aside the requirement that plaintiffs file an entirely separate action—as envisioned under § 1083(c)(3)—may be justifiable on grounds of prudence and judicial economy, those same rationales cannot overcome the absence of any congressional statement as to retroactivity. *See Simon v. Republic of Iraq*, 529 F.3d 1187, 1191 (D.C. Cir. 2008) ("[A] statute applies to a pending case only if the Congress clearly so provides."), *reversed on other grounds by Republic of Iraq v. Beaty*, 129 S. Ct. 2183 (2009). As set forth above, the related case procedures in the NDAA do not address retroactivity, other than to permit cases which might otherwise be time-barred to be filed anew under § 1605A. The Court must therefore turn to the second step of the retroactivity evaluation.

Where, as here, "there is no congressional directive on the temporal reach of the statute," courts must consider "whether the application of the statute to the conduct at issue would result in a retroactive effect." *Martin*, 527 U.S. at 352. If such a retroactive effect would be created, courts, "in keeping with our 'traditional presumption' against retroactivity, [must] presume that the statute does not apply to that conduct." *Id*. Here, the relevant conduct—work performed by Dr. Meek—occurred prior to the 2008 Amendments, and to permit payment pursuant to a subsequently-enacted statute where that law does not expressly provide for such retroactive application would be contrary to established practices and undermine Congress' role in determining the temporal scope of a new statute. The plain language of § 1083(c)(3) demonstrates that Congress envisioned plaintiffs invoking the provision to bring *new suits* related to *prior events*; not to convert *prior actions* themselves—an eventuality Congress instead

14

provided for in § 1083(c)(2). Thus, for sake of consistency and to respect the clear divisions Congress articulated between the prior action procedures and the related action procedures, the Court must treat the filing of plaintiffs' Amended Complaint here as though it brought a "new" suit at that time, and may only rely upon § 1605(e) when considering conduct occurring after the initiation of that "new" action. In light of plaintiffs' failure to invoke the prior action procedures in a timely manner, the Court holds that it cannot direct payment for any work performed by Dr. Meek prior to the filing of plaintiffs' Amended Complaint.

## IV. CONCLUSION

In enacting the 2008 Amendments, Congress sought to remedy a number of deficiencies that had plagued victims of state-sponsored terrorism in the earlier FSIA suits. Among the fixes proposed by Congress was the compensation of those individuals who, as this Court has previously explained, undertake work that is not only tedious and time-consuming—requiring "a very thorough, painstaking review of all the relevant testimony, medical evidence, economic reports, and other evidence"—but that also imposes a significant emotional toll resulting from extensive testimony on "the senseless carnage . . . and of the real and often very personal ways that the deliberate slaughter of innocents inflicts deep emotional wounds." *In re Terrorism Litig.*, 659 F. Supp. 2d at 110. In attempting, through these new provisions, to correct the deeply-flawed system of justice available to victims of terrorism, Congress was explicit—both in the text of the Act and its own record—that these new remedies should be applied retroactively where possible and where plaintiffs seek to take advantage of them. Thus, for the reasons set forth above, the Court holds that § 1605A(e)(2) of the FSIA authorizes courts to order payment to special masters who undertook work prior to the 2008 Amendments where that work was performed in cases ultimately re-filed under § 1605A pursuant to the procedures set forth in §

15

1083(c)(2) of the NDAA but not where that work was performed in cases converted pursuant to § 1083(c)(3) of the Act. Plaintiffs here failed to apply for retroactive treatment of their case as provided by Congress in the NDAA. As a result, the Court is only empowered to order payment to Dr. Meek for work performed after November 30, 2009.

A separate Order consistent with these findings shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on May 31, 2011.